UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| SHAYNE AMBER MARTIN, | ) | Civil Action No.: 4:21-cv-00483-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **ORDER** |
| Kilolo Kijakazi,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended,

42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of

Social Security, denying Plaintiff's claim for disability insurance benefits(DIB) and supplemental

security income (SSI). The only issues before the Court are whether the findings of fact are supported

by substantial evidence and whether proper legal standards have been applied. This action is

proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I.  RELEVANT BACKGROUND

**A.     Procedural History**

Plaintiff filed an application for DIB in January 2018 and SSI in December 2017, alleging

inability to work since November 30, 2016. (Tr. 27).  Her claims were denied initially and upon

reconsideration.  Thereafter, Plaintiff filed a request for a hearing. Plaintiff and a vocational expert

(VE) testified at a hearing in January 2020.  The Administrative Law Judge (ALJ) issued an

unfavorable decision on January 28, 2020, finding that Plaintiff was not disabled within the meaning

---

[1] Kilolo Kijakazi is the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted for Defendant Andrew Saul who was the Commissioner of Social Security when this action was filed.

of the Act. (Tr. 27). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied in December 2020, making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff filed an action in this court in February 2021. (ECF No. 1).

## B.    Plaintiff's Background

Plaintiff was born on April 14, 1975, and was forty-one years old on the alleged onset date. (Tr. 41). Plaintiff had at least a high school education and past work of caseworker, director of a community organization, and masseuse. (Tr. 41). Plaintiff alleges disability originally due to hypoglycemia, bipolar disorder, frequent unconsciousness, liver disease, migraines, headaches, and back problems. (Tr. 94).

## C.    The ALJ's Decision

In the decision of January 2020, the ALJ made the following findings of fact and conclusions of law (Tr. 27):

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2.    The claimant has not engaged in substantial gainful activity since November 30, 2016, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.    The claimant has the following severe impairments: lumbar lordosis, major depressive disorder, generalized anxiety disorder with panic attacks, and post-traumatic stress disorder. (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can never climb

2

ladders, ropes, or scaffolds and can occasionally climb ramps and stairs and can occasionally stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to temperature extremes, humidity, and workplace hazards. The claimant is limited to simple and routine tasks with no interaction with the general public. She can work in proximity to but not in coordination with others.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.   The claimant was born on April 14, 1975 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## II. DISCUSSION

Plaintiff argues generally that the ALJ did not perform a proper function by function analysis. Plaintiff argues the ALJ erred in finding hypoglycemia non-severe. Plaintiff argues the RFC does not properly accommodate mental impairments. Plaintiff argues the ALJ did not properly evaluate limitations in concentration, persistence, and pace. Plaintiff argues the ALJ erred in the subjective

symptom evaluation. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

## A.    LEGAL FRAMEWORK

### 1.    The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5)

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S.

4

whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*,

_____

521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational.  *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision."  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).  Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

6

**B.    ANALYSIS**

**Hypoglycemia**

Plaintiff argues the ALJ erred in finding hypoglycemia non-severe.

A severe impairment is defined by the regulations as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  Plaintiff bears the burden of demonstrating that she has a severe impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  However, "'[a]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.' " *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984) (*quoting Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984)).  The severe impairment inquiry "is a de minimis screening device to dispose of groundless claims." *McCrea v. Comm'r*, 370 F.3d 357, 360 (3rd Cir. 2004) (citation omitted). A finding of a single severe impairment at step two of the sequential evaluation is enough to ensure that the factfinder will progress to step three.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir.2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

As to hypoglycemia, the ALJ found:

The claimant was seen by an endocrinologist on February 13, 2017 for hypoglycemia evaluation. (Exhibit 9F). She reported diagnosis in 2009 and indicated that she experiences post-prandial light-headedness and shakiness one hour after eating. She noted increased urinary frequency but denied incontinence. The claimant complained of arthralgias, joint pain, and edema. She also alleged depression and insomnia. On exam, the claimant appeared obese but healthy, was in no distress, and ambulated normally. On mental status examination, the claimant had good insight and judgment,

normal mood and affect, and was active and alert. She was fully oriented and had intact recent and remote memory. On musculoskeletal exam, the claimant had normal tone and strength, normal movement of all extremities and no edema. Her neurological exam was grossly within normal limits. The claimant was assessed with unspecified hypoglycemia, provided information on non-diabetic hypoglycemia, and was started on acarbose and advised to use glucose for low blood sugar. The claimant had just one other endocrine office visit, in April 2017, at which time she reported discontinuing acarbose after one week due to lethargy and headaches. Additional labs were ordered to determine if the claimant had adrenal insufficiency or surreptitious use of sulfonylureas causing her symptoms. She was advised to take cortisol in the mornings. Further undermining the claimant's complaints of frequent syncopal episodes, her glucose readings have consistently been within normal limits with limited complaint of such episodes in her treatment notes.

(Tr. 30).

Further in the opinion, the ALJ considered Plaintiff's testimony that she started having regular syncopal episodes approximately eleven years prior to the hearing. (Tr. 33). Plaintiff reported a sensitivity to carbohydrates and stated that eating carbohydrates causes her to pass out and she passes out 3-5 days per week and that after an episode she returns to normal only after 45-60 minutes. (Tr. 33-34). "She has seen a nutritionist but [reported] adverse side-effects from recommended treatment and reported no other medical treatment for this condition." (Tr. 34). Plaintiff reported in a typical day she tries to eat but "typically passes out for a while and then runs errands, does schoolwork, picks up her children from school, fixes dinner, watches television or reads, and goes to bed." (Tr. 34). "She drives alone and expressed no concern in this report or at her hearing that she might experience a syncopal episode while driving her children." (Tr. 35). Plaintiff reported that she passed out 95 times in a five month period and was unconscious for 75-150 minutes each time. (Tr. 36). The ALJ addressed these allegations: "These reports and this statement are unsupported by treatment notes and complaints to the claimant's primary care providers. The undersigned notes, as well, that the claimant has not been advised not to drive, and feels safe and

8

stable enough to drive her children to and from school daily without risk of syncopal episode." (Tr. 36).

In addition to considering Plaintiff's reports regarding hypoglycemia, the ALJ also discussed medical records in the RFC narrative. The ALJ noted visits where Plaintiff had no complaint of low blood sugar or syncopal episodes. (Tr. 37). The ALJ reviewed records where Plaintiff only tried acarbose for one week and had not followed her endocrinologist's recommendations. (Tr. 38). The ALJ noted glucose results were within normal limits. (Tr. 38). The ALJ noted: "She stated that the main condition preventing her from working is passing out six times per week due to low blood sugar. The undersigned notes that the claimant never followed up with recommended endocrinology lab work and made no other attempt to determine the cause of her alleged syncopal episodes." (Tr. 40). The ALJ discussed that Plaintiff never complained of debilitating unconsciousness to her treatment providers. (Tr. 40).

Because the record shows that the ALJ here considered all impairments, whether severe or not, at later steps, any error at step two is harmless. *See* 20 C.F.R. § 404.1545(a)(2); *Singleton v. Astrue*, 2009 WL 1942191, at *3 (D.S.C. 2009) ("Even were the court to agree that Plaintiff's depression should have been found 'severe' at step two, any error would be harmless because if Plaintiff makes a threshold showing of any 'severe' impairment, the ALJ continues with the sequential evaluation process and considers all impairments, both severe and nonsevere."). Regulations require that an ALJ "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe," in determining the claimant's RFC. 20 C.F.R. § 404.1545(e); *see also* SSR 96–8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' "). As discussed

above, the ALJ clearly considered hypoglycemia and syncopal episode allegations in the RFC narrative. Substantial evidence supports the ALJ's findings.

**RFC**

Plaintiff argues generally that the ALJ did not perform a proper function by function analysis. Plaintiff argues the RFC does not properly accommodate mental impairments. Plaintiff argues the ALJ did not properly evaluate limitations in concentration, persistence, and pace.

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

Mental

Plaintiff argues the RFC does not properly accommodate Plaintiff's mental impairments.

10

Plaintiff cites to evidence of anxiety and panic being triggered by being in public, depression screens, reports of crying, intrusive thoughts, mood swings, and hallucinations. (ECF No. 20 at 22-24). "While the ALJ cited a rationale to support these findings, the ALJ failed to acknowledge the severity of the overall picture of Martin's condition and the waxing and waning nature of bipolar disorder as set forth in the summary above." (ECF No. 20 at 24). Plaintiff argues the RFC of no interaction with the general public and ability to work in proximity but not in coordination with others was not "enough." (ECF No. 20 at 25). Plaintiff appears to seek a limitation on supervisor contact, further limits on coworker contact, and time off task for panic attacks and syncopal episodes(which were already discussed above).

The ALJ, in formulating the RFC, considered Plaintiff's allegations, including spending some days in bed, argumentative, cycling rapidly between depression and mania, anxiety, panic attacks in crowds, paranoia, crying, performing household activities for her children and her self, and rare instances of frivolous spending. (Tr. 34-35). The ALJ noted that Plaintiff reported shopping in stores, spending time with family, and living with others. (Tr. 32). The ALJ discussed Dr. Simons' statements that Plaintiff's allegations of being in a state of constant panic was not at all likely and that Plaintiff's report of ability to function without medications was inconsistent with bipolar disorder. (Tr. 32). Dr. Simons suspected Plaintiff was exaggerating her symptoms. (Tr. 610). Plaintiff appeared to be comfortable, pleasant, and cooperative with good rapport with providers. (Tr. 32).

Based on the foregoing, the ALJ properly considered the record and cited to substantial evidence to support the RFC found. Where there are two reasonable views of the evidence, the responsibility falls on the ALJ and it is not the court's duty to decide between them. *Johnson v.*

*Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). The court cannot say that a reasonable mind would not reach this RFC in view of the totality of the evidence.

CPP

Plaintiff argues the ALJ did not properly evaluate limitations in concentration, persistence, and pace. The ALJ here found mild limitations in this paragraph B criteria:

> The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. The claimant has mild limitations in this domain. The claimant contended that she has limitations in concentrating generally, focusing generally, and completing tasks. On consultative examination, Dr. Jonathan Simons stated that the claimant's self-reported anger and mood issues could cause decreased concentration, persistence, and pace in skilled work situations. However, he found the claimant to have adequate concentration on mental status examination and the claimant had intact attention and concentration at her September 2019 mental health intake appointment. (Exhibit 16F). Her ability to maintain concentration and pace is reflected by her statements that she drives, is teaching her sons to drive, prepares meals, watches television, reads, prepares in hobbies such has drawing and painting, manages her finances, and manages her own medical care.

(Tr. 32). Under *Mascio*, once an ALJ has made an earlier finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in the RFC assessment or explain why no such limitation is necessary. *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). Here the ALJ did not make such a finding to invoke *Mascio*'s applicability. The ALJ cited to Plaintiff's own reports, the consultative examination, and Plaintiff's mental health intake appointment to support the finding of a mild and not moderate limitation in this paragraph B criteria. (Tr. 32). Substantial evidence supports this finding.

As already discussed in the issues above, in formulating the RFC, the ALJ considered Plaintiff's allegations, subjective reports, objective evidence, and opinions. (Tr. 32-41). The ALJ

supported the functional limitations found in the ALJ's RFC determination with discussion and citation to substantial evidence in the record. An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). Based upon the foregoing, substantial evidence supports the ALJ's RFC.

As to Plaintiff's arguments regarding a proper function by function analysis, the ALJ's RFC and RFC narrative is supported by substantial evidence as displayed above. (ECF No. 20 at 19). The RFC discussion by the ALJ permitted meaningful review.[4]

**Subjective Symptom Evaluation**

Plaintiff argues the ALJ erred in performing subjective symptom evaluation.

SSR 16-3p is applicable to cases decided after its effective date, such as this case. *See Morton v. Berryhill*, No. 8:16-cv-0232-MBS, 2017 WL 1044847, *3 (D.S.C. Mar. 20, 2017). Although SSR16-3p eliminates usage of the term "credibility" because the regulations do not use the term, the assessment and evaluation of Plaintiff's symptoms requires usage of most of the same factors considered under SSR 96-7p.

Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective

---

[4] Remand may be appropriate when there is no function by function analysis, but remand is only appropriate when meaningful review is frustrated and the court is "unable to fathom the rationale in relation to evidence in the record." *See Mascio*, 780 F.3d at 636 (*citing Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). Such is not the case here on either account. *See e.g. Ladda v. Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. Oct. 18, 2018)and *Wilbanks v. Berryhill*, No. CV 1:17-1069-JMC-SVH, 2018 WL 4941121, at *10 (D.S.C. Feb. 7, 2018), report and recommendation adopted sub nom., 2018 WL 4476118 (D.S.C. Sept. 19, 2018).

complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce her capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, an individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record." SSR 16-3p, at *11.

The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision. (Tr. 34). The ALJ reviewed Plaintiff's testimony:

> When asked why she feels she is unable to work, the claimant reported worsening of her hypoglycemia and stated that she started having regular syncopal episodes approximately 11 years prior to her hearing. She reported a sensitivity to carbohydrates and stated that eating them causes her to pass out. The claimant reported passing out 3-5 days per week and stated that following a syncopal episode, it takes her 45-60 minutes to return to normal.

> She has seen a nutritionist but adverse side-effects from recommended treatment and reported no other medical treatment for this condition. Regarding her mental health, the claimant stated that mood disorders run in her family, that she has had problems since childhood, and that she has had good periods but that her symptoms have worsened over the past few years. The claimant reported feeling overwhelmed and having a hard time getting through the day. She alleged that she spends some days in bed. While working, the claimant stated that, when she was manic, she was argumentative and was disciplined. Her allegation that she was terminated due to her behavior is inconsistent with her statements elsewhere in the record. The claimant reported that she cycles rapidly between depression and mania. She alleged anxiety and panic attacks in crowds and stated that she shops in the middle of the night to avoid people.

15

The claimant reported back pain that is 6-7/10 on the pain scale and said this is getting worse and that she must sit after standing 15 minutes and has to change position frequently. She can walk her dog for 7-8 minutes before experiencing pain and can sit for 15-20 minutes at a time. She has not been recommended for surgery and was unsure of her diagnosis. She takes only nonsteroidal anti-inflammatory drugs for this condition. The claimant stated that she has to use the bathroom every hour. She also alleged pain due to enlarged liver but no treatment for this condition. The claimant is status-post hysterectomy and stated that this weakened her stomach muscles and her ability to lift more than 15 pounds but again denied treatment. When asked if her mental health symptoms are controlled, the claimant stated that medication prevents her from having suicidal ideation but causes her to feel numb and lethargic. As of her hearing date, the claimant reported weighing 275 pounds at 69 inches tall and stated that this is heavy for her. The claimant lives alone. She reported a history of migraines treated with over-the-counter medication.

(Tr. 33-34).

The ALJ thoroughly summarized and considered Plaintiff's allegations in written reports:

The claimant completed similar adult function reports in February and August 2018. (Exhibits 12E and 15E). In her February 2018 report, the claimant stated, generally, that she passes out three to six times weekly for 90 minutes to four hours each time due to hypoglycemia. She also noted diagnosis with bipolar I disorder with emotional instability, paranoia, inability to concentrate, agitation, crying periods, and argumentativeness. The claimant alleged severe back pain and reported inability to sit or stand for longer than 30 minutes at a time without needing to change position. She reported migraines causing light and sound sensitivity, blurred vision, and occasional black outs. In describing a typical day, the claimant stated that she wakes her children for school and takes them to school.
She alleged that she tries to eat but typically passes out for a while and then runs errands, does schoolwork, picks up her children from school, fixes dinner, watches television or reads, and goes to bed.
Her care for her two children includes cooking for them, doing laundry, and taking them to and from school and school activities. The claimant has pets whom she plays with, takes outside several times daily, and occasionally walks. She alleged insomnia. Regarding personal care, the claimant stated that she has no problem unless she is in a severe depression. She denied needing reminders to take care of personal needs or to take medication. The claimant prepares meals daily but noted that she is unable to eat certain items due to hypoglycemia. She reported that she is able to perform all household chores but that they are dependent on her hypoglycemic episodes. She needs help[] lifting over 15 pounds. The claimant reported going outside daily to walk her dogs but complained of occasional dizziness or vertigo. She drives alone and expressed no concern in this report or at her hearing that she might experience

16

a syncopal episode while driving her children. The claimant avoids busy places due to anxiety. She is able to shop in stores and by computer and tends to shop in person at night. The claimant is able to pay bills, count change, handle a savings account, and use a checkbook. She alleged rare instances of frivolous spending with mania.

The claimant's reported hobbies and interests include drawing, painting, photography, reading, and watching television and she said that she performs most of these activities once to twice weekly and watches television daily. The claimant alleged some disinterest in activities due to depression. Socially, the claimant spends time with her children and talks with her mother but does not like to be around crowds. This undermines her next statement that she has no relationship with family and no friends. The claimant alleged difficulty getting along with coworkers and supervisors and stated that she has become withdrawn. Functionally, the claimant alleged difficulty lifting, walking, sitting, talking, hearing, seeing, with memory, completing tasks, with concentration, in understanding, and in getting along with others. She stated that she is able to lift 15 pounds, and can walk and sit for 30 minutes each.

During manic episodes, the claimant stated that she can pay attention only for a few minutes and cannot finish started tasks. The claimant normally follows written and spoken instructions very well unless she is manic or depressed. She reported difficulty getting along with authority figures. Contrary to her testimony, the claimant stated that she has been disciplined but never fired due to her interpersonal issues. She alleged inability to handle stress and change in routine. The claimant denied taking any prescription medications due to financial constraints.

In her August 2018 report, the claimant made similar allegations and statements. (Exhibit 15E). Generally, she stated that she has frequent illness and pain that would cause her to miss 2-5 days of work per week. She continued to report caring for her children and pets and performing household chores as able. In this second report, the claimant indicated that she rarely goes outside but does drive and goes out alone. She again reported various hobbies including reading, watching television, listening to music, playing with her dog, painting, and drawing. She denied engaging in any social activities and stated that she is totally withdrawn and has panic attacks when leaving her house. She reported greater physical functional limitations than in her February 2018 report and said that she can walk for only 10-15 minutes. She also alleged difficulty following spoken instructions. The claimant alleged insomnia, nausea, dizziness, sweating, and shaking as side-effects of Prozac and Lamictal. She reported that she gets vertigo when leaving her house and inability to maintain relationships due to her mood disorder. Attached to this report, the claimant submitted a statement detailing how many times she had passed out in a five-month period; she alleged passing out approximately 95 times and stated that she was unconscious each time for approximately 75 minutes to two and a half hours. These reports and this statement are unsupported by treatment notes and complaints to the claimant's primary care providers. The undersigned notes, as well, that the claimant

has not been advised not to drive, and feels safe and stable enough to drive her children to and from school daily without risk of syncopal episode.

(Tr. 34-35).

The ALJ then discussed Plaintiff's son's function report. He reported Plaintiff cleans the house and prepares meals. He reported helping her around the house. Plaintiff prepared home cooked meals daily and did laundry. Plaintiff shopped in stores. He stated Plaintiff rarely spends time with others and does not get along well with extended family. (Tr. (Tr. 36). The ALJ found that Plaintiff's son's allegations of difficulty with physical activities was contradicted by performance of household chores and personal care. Plaintiff's son alleged Plaintiff had medication side effects of shaking, nausea, sweating, and insomnia; the ALJ noted however that Plaintiff herself denied side effects at an April 2018 medication management visit. The ALJ found "this assessment [is] partially persuasive as it offers some insight in the claimant's activities of daily living that is consistent with the remaining medical evidence of record." (Tr. 36).

The ALJ then discussed Plaintiff's medical treatment records, finding that they did not reflect any abnormalities to suggest Plaintiff was incapable of the determined RFC. (Tr. 36). The ALJ considered a December 2016 visit for insomnia. Plaintiff reported occasional cluster headaches, ankle swelling, back pain, urinary frequency, joint pain, and cold intolerance. Upon exam, Plaintiff had normal gait, loss of normal curvature of the cervical spine, mild vertebral tenderness upon lumbar spine palpation, normal range of motion, negative straight leg raising, mild swan neck deformity in hands, intact recent and remote memory, normal judgment and insight, calm and cooperative behavior, and normal mood and affect. (Tr. 37). Plaintiff reported eating a high-protein diet to avoid frequent syncope; she was referred to endocrinology. Plaintiff reported a history of

18

bipolar disorder, previously treated with Lamictal and Celexa. Significantly, Plaintiff reported no medication since 2012 and reported she was doing well off of medication. Lab work showed Plaintiff's glucose was normal. The ALJ cited to Exhibit 4F. The ALJ noted September 2016 imaging showed mild apex leftward curvature of the spine with no acute fracture or malalignment and minimal multilevel ventral osteophytosis. (Tr. 37).  The ALJ discussed notes from a February 2017 visit, citing Exhibit 8F. (Tr. 37). At that visit, Plaintiff denied headache, fatigue, cold intolerance, dizziness, edema, frequent urination, memory loss, and depressed mood. Plaintiff's exam was normal except for lumbar lordosis straightening and mild tenderness over lumbosacral spine.  (Tr. 37). The ALJ noted a April 2017 visit for complaints of low back pain and limited range of motion. Plaintiff's exam was similar to the prior exam. Plaintiff was referred to an orthopedist. Plaintiff did not complain of low blood sugar or syncopal episodes. After a May 2017 visit and labs, Plaintiff had a normal exam and was assessed with asymptomatic mild splenomegaly and possible hepatic stenosis. (Tr. 37).

October 2017 imaging showed mild to moderate lumbar spondylosis with diminished disk height. The ALJ cited to Exhibit 11F. A lesion was noted to be benign and unlikely to cause pain. Plaintiff had a normal exam and complained of pain with range of motion. Plaintiff denied loss of consciousness or dizziness. (Tr. 37). Plaintiff reported depression but had normal mood/affect. Dr. Alci advised for weight loss and against prolonged sitting and lifting heavy items. Plaintiff was to exercise. In December 2017, Plaintiff was prescribed 10 hydrocodone tablets. (Tr. 37).

The ALJ noted a 13 month gap in treatment by her primary care physician, citing Exhibit 14F. Plaintiff's depression scored was severe. Plaintiff was seen for hypoglycemia followup where she reported stopping acarbose but not informing that she only took it for one week and did not

follow the endocrinologist's recommendations. Plaintiff alleged frequent dizziness, syncope, and depressed mood. Plaintiff "denied ability to afford care or medication. The claimant has not sought referral to low or no-cost clinics in her areas or asked for assistance with medication cost." (Tr. 38). Exam was similar to prior exams, except Plaintiff appeared depressed. Plaintiff was started on Prozac and Lamictal for bipolar and major depressive disorder. Plaintiff was referred for assistance with medications. In July 2018, Plaintiff had some improvement and dosage was increased. "It does not appear that the claimant followed up with medication assistance." (Tr. 38).

In October 2018, Plaintiff reported manic and anxious mood and insomnia; medications/dosages were changed. December 2018 glucose was normal; the ALJ cited to Exhibit 15F. (Tr. 38). Plaintiff's bipolar was noted to be well-controlled on current regimen. Plaintiff reported no medication side effects and no complaints of syncopal or hypoglycemia episodes. In March 2019, Plaintiff was referred to counseling.

At an April 2019 visit, Plaintiff denied back pain or difficulty sleeping. Plaintiff reported being employed. Plaintiff reported doing all shopping and meals. Plaintiff reported doing laundry on her own. Plaintiff reported improved mood and sleep but reported panic attacks. Plaintiff was prescribed Buspar and counseling. Plaintiff switched from Buspar to Trazodone in May 2019 due to poor tolerance. Plaintiff reported a decrease of depressive symptoms. Plaintiff's exam in all categories was normal. "The claimant was urged to walk for 30 minutes five days per week and was not noted to have any physical or mental condition preventing her from doing so." (Tr. 38).

The ALJ noted Plaintiff attended three counseling sessions in September 2019 but only the intake questionnaire was produced, citing Exhibit 16F. (Tr. 38). Plaintiff alleged symptoms of insomnia, mania, and depression. (Tr. 39). Plaintiff alleged a two decade history of inability to

function, crying, and extreme mania. The ALJ found that Plaintiff's denial of any family relationship and report of single activity of watching television was inconsistent with and contradicted by her function reports. (Tr. 39). Upon exam, Plaintiff was lethargic, cooperative, avoided eye contact, appeared depressed, flat affect, slow speech, and logical thought process. Plaintiff reported auditory hallucinations. Plaintiff had intact memory and attention. (Tr. 39). Insight was limited. Plaintiff was found to be able to concentrate. Because there are no other records provided, the ALJ noted it was unclear if Plaintiff followed treatment recommendations or gained any benefit from sessions, but physician notes indicated symptom improvement with medication.

The ALJ then weighed opinions. (Tr. 39). Dr. Simons performed a consultative exam. Plaintiff gave Dr. Simon a December 2016 visit note that noted Plaintiff was doing well psychologically and had not taken medication since 2012. Plaintiff alleged she cried for days at a time and was unable to get out of bed. (Tr. 39). Upon exam, Plaintiff appeared sad. (Tr. 40). Plaintiff had depressed mood and adequate attention/concentration. "There is no explanation for Dr. Simon's note that the claimant's attention and concentration would likely be reduced in her daily life." (Tr. 40). Plaintiff reported spending time with her children, preparing meals, performing chores, taking one online college class, gardening, painting, reading, and caring for pets. (Tr. 40). The ALJ summarized Dr. Simon's conclusions and weighed them:

> Dr. Simons stated that he had reason to suspect symptom exaggeration and noted discrepancies in the claimant's report. First, Dr. Simons noted that the claimant had reasonably long periods of employment before leaving work due to medical problems in January 2017, despite her complaints of longitudinal mental and physical health symptoms. Second, the claimant mentioned engaging in a range of activities that would be inconsistent with major depressive disorder. While the claimant may have had depressive and hypomanic episodes, Dr. Simons noted that they did not appear to have been severe enough in the past to affect her employment. The claimant relayed symptoms of post-traumatic stress disorder but Dr. Simons found her reports

of panic to be exaggerated and found that a state of constant panic was not at all likely. Additionally, Dr. Simons noted that the claimant's report that she is taking no psychiatric medications is at odds with her report of severe symptoms. He referenced her 2016 report indicating that her mood is stable without medication and noted that individuals with bipolar disorder are rarely able to function adequately without medication.

Dr. Simons assessed the claimant with somatic symptom disorder with pain, somatic symptom disorder with hypoglycemic syncope, post-traumatic stress disorder, chronic, and rule out bipolar disorder, currently depressed. He also found her to have borderline personality features. The undersigned notes that the claimant did not complain of nightmares or night terrors and she has consistently indicated ability to drive. Dr. Simons found the claimant to have mixed social functioning. The claimant has elsewhere denied termination due to social problems. Dr. Simons stated that it is undetermined whether the claimant would have social work problems.
Cognitively, Dr. Simons noted that the claimant is probably capable of skilled work but that her alleged syncopal episodes could cause limitations in attention, concentration, persistence, and pace. He stated that the claimant's alleged problems with mood and anger might decrease her ability to attend, concentration, and maintain persistence and pace in skilled work situations. The undersigned finds this assessment generally persuasive, as it is consistent with later treatment notes and the medical evidence of record as a whole.

(Tr. 39-40). The ALJ discounted the nonexamining psychological state agency consultants because they found Plaintiff's mental impairments as nonsevere and the ALJ found them severe. The ALJ concluded:

In sum, in light of the claimant's history of lumbar lordosis with occasional complaints of pain and limitation of her activities of daily living, the undersigned has limited the claimant to light work with limitations on climbing, stooping, kneeling, crouching, crawling, and exposure to workplace hazards. Although the claimant has sought and undergone limited mental health treatment and has moderate limitations only in interacting with others, the undersigned has considered the claimant's mental health assessments in limiting her to simple and routine tasks. Due to her limitations in interacting with others, the claimant can also have no interaction with the general public and can work in proximity to but not in coordination with others. However, due to the aforementioned inconsistencies, particularly the claimant's relatively benign physical and mental examinations, her failure to seek or follow prescribed treatment, the inconsistency of her allegations, and the extent of the claimant's daily activities, the undersigned cannot find the claimant's allegation that she is incapable of all work activity to be consistent with the medical evidence of record as a whole.

22

(Tr. 41).  The ALJ considered Plaintiff's allegations and discussed what was consistent and inconsistent with the evidence. It is evident from the above consideration that the ALJ consider the SSR 16-3p subjective symptom evaluation factors by considering and citing to records about Plaintiff's daily activities, Plaintiff's allegations of symptoms and the quality of those symptoms, medication, and other treatment.

A claimant's allegations alone can never establish that she is disabled. 20 C.F.R. § 404.1529. An ALJ can discount a Plaintiff's subjective complaints when they are unsupported by the record. 20 C.F.R. § 404.1529; *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996). Plaintiff is not required to be without symptoms to be found not disabled by the ALJ. Even where there is conflicting evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision.  The ALJ sufficiently explained how Plaintiff's subjective allegations were not entirely consistent with the evidence. Based on the evidence before the ALJ, the ALJ conducted a proper evaluation of subjective symptoms and cited substantial evidence to support the finding that Plaintiff's allegations of disabling symptoms were not entirely consistent with the record.

Plaintiff argues there are *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) issues here. Plaintiff cites to SSR 96-7p as to this issue, which was rescinded. (ECF No. 20 at 30). SSR 16-3p states that the SSA may find allegations regarding symptoms are inconsistent with the overall evidence of record where the frequency or extent of treatment is not comparable with the degree of subjective complaints or if there is a failure to follow prescribed treatment; factors to consider in this analysis are many, one of which is "may not be able to afford treatment and may not have access to free or low cost-medical services." SSR 16-3p. The ALJ fully addressed allegations of lack of

23

finances to acquire treatment as laid out above. (Tr. 38) Moreover, the ALJ relied on more factors than this one in performing the subjective symptom evaluation.

### III. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

s/ Thomas E. Rogers, III

August 19, 2022                                    Thomas E. Rogers, III
Florence, South Carolina                           United States Magistrate Judge